IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| YVONKIA STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-3057 |
| ) | |
| OFFICER CHANCE WARNISHER ) | |
| and OFFICER AMY MADDOX, ) | |
| ) | |
| Defendants. ) | |

## OPINION

RICHARD MILLS, United States District Judge:

This is a civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff alleges the Defendants used excessive force in arresting her.

Pending before the Court is the Defendants' Motion for Summary Judgment.

### I. FACTUAL BACKGROUND[1]

Plaintiff Yvonkia Stewart filed a Pro Se Complaint asserting that Defendants Chance Warnisher and Amy Maddox, acting in their official capacities as

---

[1] The factual allegations are taken primarily from the Defendants' Statement of Undisputed Facts. Although the Plaintiff purports to dispute a number of these facts, she has not cited any portion of the record in asserting that any of the allegations are disputed, as is required by Federal Rule of Civil Procedure 56(c). The Court will examine the entire record in determining if the Plaintiff has created a genuine factual dispute as to the allegations. Pursuant to Rule 56(e), however, the Court will consider any assertions that are not properly addressed to be undisputed.

Springfield Police Officers, used excessive force when arresting the Plaintiff for trespassing at the Memorial Medical Center's emergency room on February 24, 2014. She also alleges claims for false arrest and a resulting seizure while in the sheriff's custody. The Plaintiff contends the Defendants' actions violated her constitutional rights and caused her physical injury and emotional damage.

The Defendants, Officers Warnisher and Maddox, are Springfield Police Officers who at all relevant times were acting within the scope of their authority as officers and acting under color of state law. The Plaintiff claims to experience "recurrent simple partial seizures." The "seizure disorder" is apparently self-diagnosed by the Plaintiff, as no medical doctor or other medical authority has diagnosed the Plaintiff as subject to seizures. The Plaintiff testified that no local medical provider will accept her as a patient. She maintains the local medical community has conspired to cover up her seizure disorder.

The Plaintiff claims her seizures are due to outside stimuli and occur every time she experiences any such stimulus. She alleges the stimuli which trigger seizures include the following: (1) walking on concrete surfaces; (2) pulling, gripping or turning things; (3) contact by any object with the back of her legs or knees; (4) persons or things that "tap" her; (5) hugging her tightly; (6) flash photography; (7) blood pressure cuffs on either arm; (8) pushing her elbows down;

(9) motion, provocative movement, jerks, bumps; (10) the metal of seat belts; and (11) the metal of scales in a doctor's office. The Plaintiff stated that the metal of a car or bicycle do not trigger seizures because the rubber tires insulate the metal from the ground. During these seizures, the Plaintiff claims to have no control over her limbs and may strike nearby persons or bruise herself.

On February 24, 2014, the Plaintiff was transported to the Memorial Medical Center emergency room after exhibiting seizure symptoms at a local doctor's office. While there, the Plaintiff was seen by a doctor and several nurses. After being seen by a second doctor, the Plaintiff was determined to be worthy of discharge from the hospital by both physicians who had seen her. Thereafter, hospital personnel attempted to issue discharge papers but the Plaintiff refused to accept the papers because she wanted to see another physician. The Plaintiff refused to leave the examining room at the hospital.

The Plaintiff believed that, because all the medical professionals she had seen refused to diagnose her seizure disorder, her visit to the emergency room on this day was an opportunity to be seen by a neurologist or epileptologist in order to diagnose her condition. When told that no neurologist or epileptologist was going to see her that day, the Plaintiff called 911.

After the Plaintiff refused to leave the examining room at the hospital, the emergency room staff called the hospital's security department as well as the Springfield Police Department. The Defendant Officers responded to the call. Joseph Bracco was one of the Memorial security officers who responded. When Bracco told the Plaintiff she was required to leave the hospital, the Plaintiff continued to refuse. The Defendants arrived and spoke with hospital personnel, including the doctors and nurses who had examined the Plaintiff, and the hospital security officers. Nurse Saxsma advised the Defendants that, although the Plaintiff claimed to have a seizure disorder, every neurologist in town who had seen her stated there were no neurological issues with the Plaintiff and they expressed doubts as to whether her seizures were genuine. Saxsma also told the Defendants that Plaintiff had been asked to leave but that she refused to do so.

After the Defendant Officers spoke to hospital personnel, Maddox spoke with the Plaintiff and advised her that she needed to leave the hospital. Officer Maddox spoke to the Plaintiff in a calm and appropriate manner. The Plaintiff maintained her uncooperative behavior and continued to refuse to leave the hospital. Officer Warnisher then spoke with the Plaintiff but she remained uncooperative. Warnisher spoke to the Plaintiff in a calm and appropriate manner.

When the Defendant Officers directed her to leave, the Plaintiff repeated her demand to see a neurologist or epileptologist.

The Plaintiff continued to refuse to leave until the Defendants were required to physically remove her from the premises. Joseph Bracco retrieved a wheelchair for the Plaintiff but the Plaintiff refused to sit in it. While the Plaintiff was being removed from the emergency department, as they passed through the waiting room she became angry and began kicking her legs and refusing to walk on her own, which resulted in the Defendant Officers being required to carry her out. While carrying the Plaintiff, the Defendants continued to try to calm the Plaintiff but were unsuccessful in calming her. The Plaintiff was violently resisting while the officers carried her, as each officer held one of the Plaintiff's shoulders. Bracco attempted to help carry the Plaintiff out by holding onto and carrying her legs but the Plaintiff continued to struggle so vigorously that she pulled out of Bracco's hold.

When they arrived at the Defendants' squad car, the Plaintiff refused to get into it. The Defendants had to forcibly guide the Plaintiff's head into the car. Attending Nurse Saxsma did not observe the Officers use a level of force in excess of that which was necessary to help he Plaintiff leave the hospital. Bracco did not observe any force that was unreasonable given the Plaintiff's continued resistance.

Both Defendants state they did not use greater force than the minimum needed to remove the Plaintiff from the hospital without hurting herself or others through her active resistance.

The Plaintiff knows the Defendants were advised by the medical professionals that she was not actually subject to seizure disorder. She also knows the Defendants were advised by medical professionals that she was trespassing and being disorderly. In her deposition, the Plaintiff acknowledged that the Defendants handled her in a manner appropriate to what they had been told by hospital personnel. At no time did the Defendants handle the Plaintiff at the hospital in a way that triggered one of her seizures.

The Defendants allege there are no genuine issues of material fact and move for summary judgment on all claims. The Plaintiff asserts factual disputes preclude the entry of summary judgment.

## II. DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child*

*Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

B. Discussion

The Plaintiff contends there are a number of genuine issues of material fact, including the following: (1) whether the Plaintiff's civil rights were violated by willful and unreasonable police misconduct; (2) whether the Plaintiff's right to privacy was violated when she was dragged through the hospital with her hospital gown open revealing her back and bra; (3) whether the Plaintiff was discharged from the Memorial Medical Center with signed authorization of discharge record; (4) whether the Plaintiff was trespassing on hospital property after being transported via ambulance service coordinated by Dr. Joshua Warrach, referring neurologist, who in an office visit induced spontaneous reflex seizures (myoclonic, focal) with consciousness maintained after he pressed downward on her elbows

7

(abducted) while standing on hard surface; (5) whether video surveillance of the incident occurring at Memorial Hospital was intentionally destroyed to avoid proof of neglect and unnecessary force applied by arresting officers; (6) whether there is video surveillance of the main hall entering and exiting the ER department; (7) whether the Plaintiff contacted the Springfield Police Department for assistance after being denied physical and neurological examination post-ambulance transport from the neurologist's office; (8) whether the Defendants' testimony of the occurrence of events constitute fraud upon the court; (9) whether the Plaintiff was physically injured due to excessive physical force applied by the arresting officers and reflex seizures triggered recurrently at the Sangamon County Jail processing center; (10) whether the Plaintiff suffers from the Central Nervous System disorder secondary to catastrophic injury to brain, brainstem, spine, discs and bone; and (11) whether the Plaintiff suffers from acquired reflux epilepsy.

The Plaintiff contends that the aforementioned issues remain unresolved and her allegations have not been contradicted. Moreover, the Plaintiff has not yet completed discovery. The Plaintiff further alleges that her "outreach to the Springfield Police Department" was necessary in order to show the "habitual waste, fraud and abuse perpetrated by healthcare providers responsible for rendering medical services." The Plaintiff asserts there are factual disputes with

respect to each count asserted against Warnisher and Maddox and summary judgment should be denied on that basis.

The Plaintiff claims she was wrongfully accused of trespassing at the Memorial Medical Center's Emergency Room. She alleges no medical exam was conducted by physicians or nurses during this encounter. The Plaintiff states she asked the officers to come to Memorial to note "the negligence of health care providers due to health care fraud." Moreover, the Defendants mishandled the Plaintiff and used excessive force to remover her, even though the Plaintiff claims there was no resistance on her part. The Plaintiff alleges that reflex seizures were triggered spontaneously when she was forced to raise her arms above her head. She further contends that bruises are the result of applied pressure and seizure events triggered when the Plaintiff was booked in to jail.

As the Defendants note, many of the Plaintiff's alleged factual disputes are legal questions or statements that are unrelated to the events of February 24, 2014 and/or are irrelevant to her claims. Although the Plaintiff complains that she has not yet completed discovery and summary judgment would therefore be improper, the Court on July 21, 2015 entered a Scheduling Order [Doc. No. 15] which provided that all discovery would be due by October 28, 2016. The Plaintiff did not seek an extension of the discovery period.

The "Introduction" portion of the Plaintiff's brief consists of a number of legal conclusions, self-diagnosed medical conclusions and statements which are irrelevant to her claims. The Plaintiff also includes 26 exhibits which are attached to her response. Most of these exhibits do not relate to the events of February 24, 2014 and have no relevance to the Plaintiff's claims.

Additionally, to the extent that she attempts to dispute the Defendants' factual allegations, the Plaintiff in those responses generally addresses her self-diagnosed medical conditions or states an incorrect legal conclusion. The Plaintiff has not adequately disputed the Defendants' factual allegations.

The pleadings of pro se litigants are liberally construed. *See Greer v. Board of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Although a pro se party is entitled to a break if she stumbles on a technicality, the litigant must still identify a genuine factual dispute in order to withstand a properly disputed summary judgment motion. *See id*.

At this "put up or shut up" stage of the litigation, the Plaintiff cannot merely rest on the allegations of the complaint. After carefully examining the record, the Court concludes that the Plaintiff has failed to identify a genuine issue of material fact. The Defendants' factual allegations are properly supported and thus are

undisputed. The Plaintiff was notified of the consequences of failing to adequately dispute the Defendants' well-supported factual allegations. *See* Doc. No. 22.

There is no factual basis for the Plaintiff's claim of excessive force. The undisputed facts demonstrate that the actions of Officers Warnisher and Maddox were objectively reasonable. Because the officers had probable cause to arrest the Plaintiff for trespass, there also is no factual basis for her claim of false arrest.

Even when construing all inferences in favor of the Plaintiff, therefore, the Court finds that Defendants used a reasonable amount of force on February 24, 2014 and did not violate the Plaintiff's rights in any manner. The Court concludes that Defendants are entitled to summary judgment on all of the Plaintiff's claims.

<u>Ergo</u>, the Defendants' Motion for Summary Judgment [d/e 21] is ALLOWED.

The final pretrial conference and trial settings are Canceled.

The Clerk will enter Judgment in favor of the Defendants and against the Plaintiff.

Upon entry of Judgment, the Clerk will terminate the case.

ENTER: June 14, 2017

    FOR THE COURT:

         /s/ *Richard Mills*
         Richard Mills
         United States District Judge